UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| F. EDWIN WOODLEY, and BAKER STREET MINISTRIES,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>THE STATE OF WASHINGTON, DEBRA BOIANO, TERRI COX, NANCY ZAHN, LISA POWERS, TODD HENRY and JOHN DOES 1-20,<br><br>　　　　　　　Defendants. | No. C05-2117Z<br><br>ORDER |

This matter comes before the Court on Motion for Summary Judgment, docket no. 30, by Defendants the State of Washington, Debra Boiano, Terri Cox, Nancy Zahn, Lisa Powers, Todd Henry, and John Does 1-20 (collectively, "Defendants"). Plaintiffs Baker Street Ministries ("BSM") and F. Edwin Woodley allege that Defendants improperly interfered with BSM's functions as a child-placing agency and group-care facility in violation of Washington law, the Washington State Constitution, and the United States Constitution. Defendants seek summary judgment on all of Plaintiff's claims. The Court has reviewed the Motion for Summary Judgment, the Response, and the Reply, as well as the supporting declarations and exhibits filed by the parties. Neither party has requested oral argument, and

ORDER  1–

the Court hereby enters the following Order GRANTING Defendants' Motion for Summary Judgment, docket no. 30.

## BACKGROUND

On October 11, 2000, the Washington State Department of Social and Health Services ("DSHS") issued a three-year group home license to Baker Street Ministries, doing business as "Potters House." Edison Decl., docket no. 31, Ex. 1, ¶ 1.[1] Potters House was a group home for at-risk teenage boys. Id. ¶ 3. The facility was a two-story building divided into five "pods," quasi-independent living areas, where residents were housed. Id. BSM contracted with DSHS to provide behavior rehabilitation services and care for residents. Id. ¶ 4. Among other things, BSM's contract with DSHS required the reporting of any "incident" within 24 hours. Id. The minimum staff ratio at Potters House was one staff person per four residents. Id. ¶ 5.

Potters House operated from October 2000 until February 2002. During this period there were 117 referrals concerning Potters House. These referrals were based upon a lack of supervision, failure to provide adequate meals, residents harming other residents, staff harming residents, inappropriate staff supervision of a special needs client, medication errors, lack of programming, and lack of staff training. Cox Decl., docket no. 33, ¶ 4. Although none of the 117 referrals found neglect or abuse, there were 83 "confirmed" violations of the State's Minimum License Requirements ("MLRs"). Id. As a result, DSHS issued more than a dozen "corrective action plans" to Potters House. Edison Decl., docket no. 31, Ex. 1, ¶ 6. These corrective action plans were brought to the attention of Mr. Woodley. Id.

**1.     The Langenes Report.**

---

[1] The parties have previously stipulated to many of the relevant facts underlying this action. See Edison Decl., docket no. 31, Ex. 1 (Stipulation and Order).

ORDER  2–

On August 29, 2001, Ms. Jane E. Langenes, a consultant, evaluated Potters House and reported a number of policies or practices that were not operationally or therapeutically viable. Id. ¶ 7. Ms. Langenes noted a lack of experience in residential childcare. Id. Ms. Langenes issued a report (i.e., the "Langenes Report") which made several recommendations for "Staffing and Personnel Issues." Id. The Report recommended expanded efforts to hire staff and a house manager with greater experience and qualifications. Id. The Report recommended that Potters House work to clarify staff roles and define responsibilities, duties, and supervisory authority, and recommended the development of a comprehensive training program including behavior, skills, and resident supervision. Id. The Report also recommended the establishment of better training for managers and supervisors, more staff supervision meetings, and empowering management and supervisors to put forth day-to-day decisions with less input from BSM administration. Id.

On November 7, 2001, representatives from DSHS met with Potters House representatives, including Mr. Woodley, to discuss the Langenes Report and how Potters House planned to implement the recommendations. Id. ¶ 8. On January 7, 2002, Potters House provided DSHS with a written response to the Langenes Report. Id.

**2.   The Choking Incident.**

Ted Anderson began employment as a counselor with Potters House on January 2, 2002. On February 1, 2002, Mr. Anderson was in charge of pod five, and left for a brief period to get a towel to clean up a spill. Id. ¶ 13. While gone, children T.B. and A.T. became involved in a physical scuffle. Id. A.T. put T.B. in a choke hold, causing T.B. to "very briefly" pass out. T.B. then became incontinent of bladder, and someone "poked him in his privates with a screwdriver to see if he was pretending." Id.[2] Twelve year-old T.B. was not a member of pod five, but had come to visit residents with the permission of his pod

---

[2] The various administrative proceedings have referred to this as the Potters House "choke-out incident."

ORDER   3–

supervisor.  Id.  When T.B. woke up, he was embarrassed and changed his clothing, and attempted to take his wet clothing to the laundry.  Id. ¶ 16.  There, he encountered the day shift lead person, and told of the incident.  Id.

**3.     The Stop Placement Orders.**

DSHS issued a stop placement order to Potters House on February 7, 2002.  Id. ¶ 23; see also Henry Decl., docket no. 34, Ex. 1 (Letter of Feb. 7, 2002).  The basis for the stop placement order was the choking incident and the history of MLR violations at Potters House.  Edison Decl., docket no. 31, Ex. 1, ¶ 25.  Children were removed from Potters House on February 13, 2002, following a directive from Nancy Zahn, statewide Director of the Division of Licensed Services.  Id.  Ms. Zahn's directive followed confirmation that twelve year-old T.B. had been choked to unconsciousness.  Id.  On June 3, 2002, DLR sent BSM a stop placement notice in its capacity as a child placing agency.  Henry Decl., docket no. 34, Ex. 2 (Letter of June 3, 2002).

BSM requested an adjudicative hearing before the Washington State Office of Administrative Hearings for the Department of Social and Health Services on June 13, 2002, seeking to "cancel" the stop placement notices on Potters House and BSM.  Edison Decl., docket no. 31, Ex. 4.  DSHS opposed the hearing because it believed there was no statutory right to a hearing on an order of stop placement; DSHS contended that a hearing was allowed only when a license is denied, revoked, suspended, or modified.  On July 5, 2002, Administrative Law Judge Victor Sampson agreed and dismissed BSM's request for a hearing.  Id., Ex. 5.  The ALJ concluded that he had no jurisdiction without a licensing decision.  Id.

BSM requested a review of the ALJ's decision by the DSHS Board of Appeals on July 10, 2002; on July 31, 2002, Board of Appeals Review Judge Christine Stalnaker issued an order remanding the case to determine the threshold question of whether a stop placement order was a de facto revocation.  Id., Ex. 8.  In the interim, DSHS withdrew the stop

ORDER   4–

1  placement orders. Henry Decl., docket no. 34, Ex. 3 (Letter of July 17, 2002). DSHS formally acted to revoke the Potters House group home license by letter to Mr. Woodley dated July 24, 2002. Edison Decl., docket no. 31, Ex. 9, at 85; see also Henry Decl., docket no. 34, Ex. 4 (Letter of July 24, 2002). Neither Edwin Woodley or BSM requested a hearing on the revocation of the Potters House group home license. Edison Decl., docket no. 31, Ex. 7 (Woodley Dep.).

The administrative hearing regarding the stop placement orders was subsequently terminated as moot by the ALJ because the orders had been withdrawn. Id., Ex. 9. Review Judge Stalnaker upheld the dismissal. Id., Ex. 10. Judge Stalnaker noted in the Findings of Fact that BSM had failed to appeal the revocation, in spite of being asked by the ALJ whether they intended to do so. Id., Ex. 10 at 104. BSM sought review of Judge Stalnaker's decision in Thurston County Superior Court, and on September 25, 2003, Superior Court Judge Daniel Bershauer affirmed Judge Stalnaker's decision. Id., Ex. 11, at 127.

**4.     The Neglect Charge.**

On May 15, 2002, Mr. Woodley was notified that he was found to be responsible for physical neglect based upon the choking incident, and other concerns regarding supervision issues and staffing at Potters House. Henry Decl., docket no. 34, Ex. 5 (Letter of May 15, 2002). On July 10, 2002, Mr. Woodley requested a hearing on the determination. Edison Decl., docket no. 31, Ex. 12. On December 15, 2003, Administrative Law Judge Gordon Griggs conducted a hearing, and issued an Initial Order on March 10, 2004. Id., Ex. 13. On July 29, 2004, Review Judge Marjorie Gray reversed ALJ Grigg's Initial Order determining in Conclusions of Law that Woodley abused and neglected one or more children in his care. See id., Ex. 2, at 50. Judge Gray found that "Woodley was in loco parentis to the children in Potters House." Id., Ex. 2, at 48. Judge Gray also modified several Findings of Fact to reflect that Woodley knew of extensive problems at Potters House. Id., Ex. 2, at 41-43.

ORDER  5–

On May 4, 2005, Superior Court Judge Bruce Hilyer reversed the finding that Woodley was in loco parentis to the children at Potters House. Id., Ex. 3. Judge Hilyer denied Mr. Woodley's challenge to Judge Gray's Findings of Fact. Id.

## DISCUSSION

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the opposing party must show that there is a genuine issue of fact for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The opposing party must present significant and probative evidence to support its claim or defense. Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

In order to defeat a motion for summary judgment, the non-moving party must make more than conclusory allegations, speculations, or argumentative assertions that material facts are in dispute. Wallis v. J.R. Simplot Co., 26 F.3d 885, 890 (9th Cir. 1994). Moreover, in ruling on a motion for summary judgment, the Court may only consider evidence that would be admissible at trial, and may not consider inadmissible hearsay. Key Bank of Puget Sound v. Alaskan Harvester, 738 F. Supp. 398, 401 (W.D. Wash. 1989).

For purposes of these motions for summary judgment, reasonable doubts as to the existence of material facts are resolved against the moving party and inferences are drawn in the light most favorable to the opposing party. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). However, if no factual showing is made in opposition to a motion for summary judgment, the district court is not required to search the record *sua sponte* for some genuine issue of material fact. See Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1029 (9th Cir. 2001) ("The district court may limit its review to the documents

ORDER  6–

submitted for the purposes of summary judgment and those parts of the record *specifically referenced therein.*") (emphasis added).

1. **State Law Claims.**

    A. **Statute of Limitations.**

The Defendants urge the Court to find the state law claims in Plaintiffs' lawsuit are time barred. Washington provides a three-year statute of limitations for tort claims. See RCW 4.16.080(2). Plaintiffs respond that "this is an action on the obligation arising from a written contract and therefore subject to a six years statute of limitation." See Response, docket no. 39, at 14; see also RCW 4.16.040. Plaintiffs' allegation that all its claims sound in contract is at odds with the representations in the Complaint:

> For purposes of commencing a lawsuit against the State of Washington, plaintiff *filed a tort claim* with the Office of Risk Management, conforming to the requirements of RCW 4.92 *et seq*.

BSM Compl., docket no. 1, ¶ 3.1 (emphasis added); see also Woodley Compl., docket no. 1 (C05-2118Z), ¶ 3.1.[3] Nevertheless, Plaintiffs' sixth claim for relief does allege breach of contract.

The statute of limitations for the breach of contract claim is six years. Plaintiffs' other state law claims, including abuse of process, negligent investigation, tortious interference, and Woodley's claims for malicious prosecution, negligent infliction of

---

[3] The Complaint in case no. C05-2117Z was filed on behalf of Plaintiff Baker Street Ministries. The Complaint in case no. C05-2118Z was filed on behalf of Plaintiff F. Edwin Woodley. The Court consolidated these actions in case no. C05-2117Z, see Minute Order, docket no. 17, pursuant to Plaintiffs' unopposed Motion to Consolidate, docket no. 15. An amended complaint was not filed. To the extent the two Complaints seek different relief, the Court will reference the Complaint in C05-2117Z as the "BSM Complaint, docket no. 1" and the Complaint in C05-2118Z as the "Woodley Complaint, docket no. 1 (C05-2118Z)."

ORDER 7–

emotional distress, and intentional infliction of emotional distress, sound in tort.[4] Under Washington law, the statute of limitations for tort claims is three years.

In Reply, the Defendants seemingly concede – at least in part – the Plaintiffs' argument with regard to the statute of limitations: Plaintiffs were required to exhaust their administrative remedies and the statute of limitations did start to run until after a final decision. In Reply, Defendants limit their statute of limitations argument to the revocation of the Potters House group home license:

> . . . this argument does not apply to Baker Street Ministries ("BSM") claims based upon the revocation of the Potters House group home license. Since plaintiffs never appealed the revocation, and the revocation occurred on July 24, 2002, any claims based upon the revocation of the Potter (sic) House license are barred by the statute of limitations and by plaintiffs' failure to exhaust their administrative remedies on the revocation.

Defs.' Reply, docket no. 44, at 2.

To the extent Plaintiffs' state law claims relate solely to the revocation, they are time barred. However, it is unclear which of Plaintiffs' claims, if any, are based only on the revocation of the group home license. A review of the BSM Complaint and Woodley Complaint reveals nothing in the various claims that compels the dismissal of any claim because it is based solely on the revocation of the Potters House group home license. At most, certain claims are based, in part, on the revocation. Accordingly, dismissal of Plaintiffs' state law causes of action based on the statute of limitations would be inappropriate.

---

[4] See, e.g., Mark v. Williams, 45 Wash. App. 182, 191 (1986) (abuse of process); Pettis v. State, 98 Wash. App. 553, 558 (1999) (negligent investigation); Pacific Northwest Shooting Park Ass'n v. City of Sequim, 158 Wash.2d 342, 351-52 (2006) (tortious interference); Fluke Corp. v. Hartford Acc. & Indem. Co., 145 Wash.2d 137, 145 (2001) (malicious prosecution); Colbert v. Moomba Sports, Inc., 132 Wash.App. 916, 923 (2006) (negligent infliction of emotional distress); Adler v. Fred Lind Manor, 153 Wash.2d 331, 340 (2004) (intentional infliction of emotional distress).

ORDER  8–

**B.     Failure to Exhaust Administrative Remedies**

The Defendants urge the Court to dismiss any claim based on the revocation of the Potters House group home license because Plaintiffs did not exhaust their administrative remedies. Baker Street Ministries had the right to request a hearing based on the revocation of the group home license, but failed to do so. See RCW 74.15.130; RCW 43.20A.205; see also Edison Decl., docket no. 31, Ex. 7 (Woodley Dep.). The failure to exhaust administrative remedies precludes a tort action under state law. See, e.g., Laymon v. Wash. Dep't. of Natural Resources, 99 Wash. App. 518, 522 (2000). Plaintiffs failed to exhaust their administrative remedies by failing to request a hearing on the license revocation. However, after reviewing each claim under state law, the Court cannot conclude that the state law claims fail without the inclusion of the revocation. The revocation forms only a part of the basis for Plaintiffs' claims. With regard to the Defendants' other actions (i.e., the stop placement orders and the neglect charge) there is no dispute that Plaintiffs exhausted their administrative remedies. Accordingly, the failure to exhaust administrative remedies does not compel the dismissal of Plaintiffs' state law causes of action.

**C.     Eleventh Amendment**

The Defendants urge the Court to dismiss state law claims asserted against the State of Washington. It is well established that 28 U.S.C. § 1367 provides the Court with supplemental jurisdiction over state law claims asserted against individuals, but does not provide jurisdiction over state law claims asserted against the State. Stanley v. Trustees of California State University, 433 F.3d 1129, 1133-34 (9th Cir. 2006); accord County of Oneida v. Oneida Indian Nation, 470 U.S. 226, 251 (1985) ("The Eleventh Amendment forecloses the application of normal principles of ancillary and pendent jurisdiction where claims are pressed against the State."). The Plaintiffs do not seriously dispute that the Court is without supplemental jurisdiction to consider state law claims brought against the State of Washington. Accordingly, Plaintiffs' state law claims brought against the State of

ORDER  9–

Washington, and against those individuals acting in their official capacities, are DISMISSED with prejudice.

Defendants acknowledge the Court's supplemental jurisdiction over state law claims relating to individual Defendants, and neither party asserts that the Court should decline to exercise supplemental jurisdiction over the remaining state law claims. Accordingly, the Court finds that an exercise of supplemental jurisdiction pursuant to 28 U.S.C. § 1367 is appropriate for state law claims asserted against individual Defendants.

**D.     State Law Claims**

**(1)     Abuse of Process**

Defendants ask the Court to grant summary judgment on Plaintiffs' claims for abuse of process, asserting there is no evidence the individual defendants had any ulterior purpose in instituting proceedings against Woodley and BSM, or of any act in the legal process that was not proper in the proceeding. See Batten v. Abrams, 28 Wash. App. 737, 745 (1981). In responding to a motion for summary judgment, the non-moving party may not simply rest on the pleadings: it must present significant and probative evidence to support its claim or defense. Wallis, 26 F.3d at 890. In Response, Plaintiffs fail to point out any evidence or disputed issues of material fact relating to the claim of abuse of process. Accordingly, Defendants' motion for summary judgment on Plaintiffs' claim for abuse of process is GRANTED.

**(2)     Negligent Investigation**

Defendants ask the Court to grant summary judgment on the Plaintiffs' claims for negligent investigation. Washington law does not recognize a cause of action for negligent investigation outside of a parental relationship. See Pettis v. Dept. of Social & Health Servs., 98 Wn. App. 553, 560 (1999). The Plaintiff has not disputed that the lack of a parental

ORDER   10–

relationship is an absolute bar to a cause of action for negligent investigation.[5] Accordingly, the Defendants' motion for summary judgment on Plaintiffs' claim for negligent investigation is GRANTED.

### (3) Tortious Interference

Edwin Woodley and BSM claim tortious interference with a contractual or business expectancy. The intentional and unjustified interference with a contractual relationship or business expectation is a tort under Washington law. Pleas v. Seattle, 112 Wash. 2d 794, 800 (1989). However, in response to the Defendants detailed analysis of Plaintiffs' claim, the Plaintiffs offer no facts or evidence in support of their claim. Plaintiffs fail to identify the relevant contract, fail to allege facts establishing an "improper purpose," and fail to allege an improper purpose or the use of improper means. Indeed, Plaintiffs offer no response at all on the question of tortious interference.

To avoid summary judgment, the non-moving party must allege the existence of some disputed issue of material fact. Wallis, 26 F.3d at 890. Plaintiffs having failed to allege or identify facts in support of their claim for tortious interference, Defendants' motion for summary judgment on this claim is GRANTED.

### (4) Malicious Prosecution

Defendants urge the Court to grant summary judgment on Plaintiff Woodley's claim for malicious prosecution. In order to prove its claim for malicious prosecution, Plaintiff must establish:

> (1) that the prosecution claimed to have been malicious was instituted or continued by the defendant; (2) that there was want of probable cause for the institution or continuation of the prosecution; (3) that the proceedings were instituted or continued through malice; (4) that the

---

[5] In addition, the Plaintiff has failed to proffer any facts, evidence, or argument in support of its claim for negligent investigation. In order to defeat a motion for summary judgment, the non-moving party must make more than conclusory allegations or argumentative assertions that material facts are in dispute: it must present significant and probative evidence to support its claim or defense. Wallis, 26 F.3d at 890.

ORDER  11–

proceedings terminated on the merits in favor of the plaintiff, or were abandoned; and (5) that the plaintiff suffered injury or damage as a result of the prosecution.

Clark v. Baines, 150 Wash. 2d 905, 911 (2004). In a civil action, two additional elements are required:

(6) arrest or seizure of property and (7) special injury (meaning injury which would not necessarily result from similar causes of action).

Id. at 912. The "gist" of the action is contained in the malice and want of probable cause elements. Id. Plaintiff Woodley responds that the Defendants lacked probable cause, and notes that the proceedings were terminated in favor of Plaintiff. See Pls.' Resp., docket no. 39, at 14. Plaintiff also alleges he was injured by the prosecution.

The Court accepts for purposes of this motion the Plaintiff's allegation that the proceedings were terminated in his favor, and that he was damaged. However, the Plaintiff has not put forth evidence tending to establish malice or the lack of probable cause. To avoid summary judgment, the non-moving party must allege the existence of some disputed issue of material fact relating to these elements. Wallis, 26 F.3d at 890. Accordingly, Defendants' motion for summary judgment on Plaintiff's malicious prosecution claim is GRANTED.

### (5) Negligent Infliction of Emotional Distress and Outrage

Defendants urge the Court to grant summary judgment on Plaintiff Woodley's claim for Negligent Infliction of Emotional Distress ("NIED") because there is no expert medical evidence of a Woodley's "diagnosable mental disorder," or other objective evidence of emotional distress. See Hegel v. McMahon, 136 Wash. 2d 122, 135 (1998) (claim for negligent infliction of emotional distress requires medical evidence of severe emotional distress). Defendants also urge that the Court must dismiss the claims for outrage because Plaintiffs have not alleged "extreme and outrageous conduct," and have failed to allege any resulting severe emotional distress. See Kloepfel v. Bokor, 149 Wash. 2d 192, 195-96 (2003). By failing to respond to either the NIED or Outrage arguments, the Plaintiffs

ORDER   12–

effectively concede that no evidence supports either charge. In addition, the Court notes there is no medical evidence of severe emotional distress, and no evidence or argument in support of the conclusion that the actions at issue were sufficiently "extreme and outrageous" to support a claim for Outrage. As the non-moving party, Plaintiff has the burden to present some evidence in support of his claims. Wallis, 26 F.3d at 890. Because they have failed to do so, the Defendants' motion for summary judgment on Plaintiff Woodley's NIED and Outrage claims is GRANTED.

### (6) Breach of Contract

Defendants ask the Court grant summary judgment on BSM's claims for breach of contract, which are based on the revocation of the Potters House group home license. Defendants urge that there was no breach of contract because the revocation of the Potters House group home license was an action taken pursuant to a statutory mandate, rather than pursuant to a term in the contract. Because an action for breach of contract requires the failure to perform a term or condition of the agreement, see Owens v. Harrison, 120 Wash. App. 909 (2004), Defendants urge that Plaintiff's claim for breach of contract must fail.

Plaintiff BSM does not respond to this argument, and does not advise the Court which term or condition of the agreement Defendants are alleged to have breached. The Complaint generally alleges a breach of the implied covenant of good faith and fair dealing through various actions by DSHS: the stop placement orders, removal of children, and refusal to engage BSM in dialogue. However, mere allegations of breach of the duty of good faith are insufficient to avoid summary judgment. Because Plaintiff fails to advise the Court what evidence, if any, supports its claim for breach of contract, the Defendants' motion for summary judgment on this claim is GRANTED.

**2.    42 U.S.C. § 1983.**

Plaintiffs assert various claims against the individual Defendants and against the State of Washington pursuant to 42 U.S.C. § 1983, including a deprivation of "federal rights" by

ORDER   13–

the individual Defendants, and a "violation of procedural due process" and substantive due process by the State of Washington. E.g., BSM Compl., docket no. 1, ¶¶ 5.1 - 7.3. The Court considers each argument under § 1983 in turn.

**A.  Statute of Limitations.**

Defendants first urge dismissal of Plaintiffs' § 1983 claims as time barred. The "appropriate statute of limitations for a 42 U.S.C. § 1983 claim is the forum state's statute of limitations for tort actions." Wilson v. Garcia, 471 U.S. 261, 269 (1985). "In Washington, that would be three years." Joshua v. Newell, 871 F.2d 884, 886 (9th Cir. 1989) (citing RCW 4.16.080(2)). Plaintiffs generally respond that "this is an action on the obligation arising from a written contract and therefore subject to a six years statute of limitation." See Response, docket no. 39, at 14; see also RCW 4.16.040. However, the mere presence of a claim for breach of contract does not alter the statute of limitations under § 1983. Claims under § 1983 claims are not contract claims, and a three year statute of limitations applies. The statute of limitations runs from each discrete act. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).

The Complaint in this matter was filed on December 22, 2005. The Defendants urge that all of the actions which form the basis of Plaintiffs' § 1983 claims occurred more than three years before the filing of the Complaint.[6] Plaintiffs counter that the statute of limitations could not have run until after they exhausted their administrative remedies. In Reply, Defendants argue that Plaintiffs were not required to exhaust their administrative remedies, see Defs.' Reply, docket no. 44, at 2 n.2. However, Defendants limit their statute of limitations defense to the revocation of the group home license, which occurred on July 24, 2002 and was not appealed. See id. at 2.

---

[6] The stop placement orders were issued on February 7, 2002 and June 3, 2002. Henry Decl., docket no. 34, Exs. 1, 2. The founded neglect charge was sent on May 15, 2002. Id., Ex. 5. The revocation of the license occurred on July 24, 2002. Id., Ex. 4.

ORDER  14–

Plaintiffs' claims under 42 U.S.C. § 1983 which relate to the revocation of the Potters House group home license are time-barred. However, as the Court has previously noted, no claims relate exclusively to the revocation. To the extent Plaintiffs claims under 42 U.S.C. § 1983 relate to the stop placement orders or the neglect charge the Court does not find the statute of limitations has run.[7] To the extent Plaintiffs' § 1983 claims relate only to the revocation of the group home license (as distinguished from the stop placement orders and the neglect charge), such a claim would require dismissal. However, because it is unclear if Plaintiffs' § 1983 claims relate solely to the revocation, the Court considers whether qualified immunity bars Plaintiffs' claims against the Defendants.

### B.  Qualified Immunity.

Defendants correctly note that neither the State of Washington, nor individuals acting in their official capacity, are "considered 'persons' under § 1983." Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). There is no respondeat superior liability under § 1983. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). Accordingly, Defendants § 1983 claims against the State of Washington, its agencies, and its individuals in their official capacities, are DISMISSED with prejudice. Personal liability under § 1983, however, may follow individual involvement in unconstitutional conduct. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

To the extent Defendants are sued in their individual capacities, they assert their entitlement to qualified immunity. Qualified immunity provides broad protection to government officials, safeguarding "all but the plainly incompetent or those who knowingly violate the law . . . ." Malley v. Briggs, 475 U.S. 335, 341 (1986); see also Saucier v. Katz, 533 U.S. 194, 205 (2001). Government officials performing discretionary functions are

---

[7] The Plaintiffs administrative appeal of the stop placement orders was final with Superior Court Judge Daniel Berschauer's Order of September 25, 2003. The neglect charge was final with Superior Court Judge Hilyer's Order of May 4, 2005.

ORDER  15–

generally shielded from liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. See Harlow, 457 U.S. at 818.

Since the Supreme Court decided Saucier, the Ninth Circuit has developed a two-step inquiry for addressing qualified immunity. A court must first determine if the evidence taken in the light most favorable to the plaintiff shows that a constitutional violation occurred. Kennedy v. City of Ridgefield, 411 F.3d 1134, 1141 (9th Cir. 2005). If a violation occurred, then the court must turn to the second step, which focuses on whether the law underlying the constitutional violation was "clearly established." Id. In this step, the court decides if the individual made a reasonable mistake about what the law requires. Id. at 1142.

Plaintiffs' Complaint alleges the deprivation of "federal rights," as well as the deprivation of Plaintiffs' rights to procedural due process and substantive due process. In responding to Defendants' Motion for Summary Judgment, however, Plaintiffs fail to identify the specific constitutional right, or rights, violated by the individual Defendants. A procedural due process claim requires the deprivation of a protected property interest occurring without due process of laws. Mitchell v. Funkhauser, 375 F.3d 477, 480 (6th Cir. 2004). Plaintiffs have made no attempt to show the existence of a protected property interest implicated in these proceedings, and the burden is on the plaintiff to establish the existence of a protected property interest. Larson v. City of Beloit, 130 F.3d 1278, 1282 (7th Cir. 1997). Even if there were a protected property interest, however, Plaintiffs do not argue they were afforded insufficient process. Moreover, with regard to the stop placement orders and neglect charge, Plaintiffs availed themselves of the administrative process afforded them. The Court finds no constitutional violation occurred with regard to Plaintiffs' right to procedural due process.

Plaintiffs' Complaint also asserts a claim for the violation of the right to substantive due process. However, Plaintiffs have presented no argument in response to Defendants'

ORDER   16–

Motion for Summary Judgment with regard to substantive due process.  In general, a substantive due process violation must "shock the conscience" or show deliberate indifference by a state actor.  See Hernandez v. Texas Dept. of Protective Services, 380 F.3d 872, 880 (5th Cir. 2004) (citing County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)).  Plaintiffs have made no attempt to identify deliberate indifference on the part of any individual Defendant, and the Court must find that no constitutional violation occurred.

Plaintiffs have failed to point to evidence supporting a constitutional violation, and the Court therefore does not reach the second step of the qualified immunity analysis.  Kennedy, 411 F.3d at 1141.  Defendants have qualified immunity from suit under § 1983.  Accordingly, Plaintiffs' claims pursuant to 42 U.S.C. § 1983, including claims for violation of "federal rights," procedural due process, and substantive due process, are DISMISSED with prejudice.

**3.   Due Process Claims under the Washington State Constitution.**

Plaintiffs' Complaint alleges various causes of action for violations of Washington State's Constitution.  The Defendants note that violations of the state constitution are not independently actionable torts, because Washington State does not have a state equivalent of 42 U.S.C. § 1983.  See Spurrell v. Bloch, 40 Wash. App. 854 (1985).  Plaintiffs fail to respond to the Defendants' argument and fail to articulate a basis for their substantive and procedural due process claims under the Washington State Constitution.  Accordingly, Plaintiffs' claims for violations of Washington State's Constitution are DISMISSED with prejudice.

## CONCLUSION

For the reasons stated in this Order, Defendants' Motion for Summary Judgment, docket no. 30, is GRANTED.  The Clerk is directed to enter judgment dismissing Plaintiffs' Complaint with prejudice.

ORDER  17–

IT IS SO ORDERED.

DATED this 1st day of March, 2007.

Thomas S. Zilly
United States District Judge

ORDER  18–